MONTGOMERY, The (WALTER v.). See Case No. 17,120.

## Case No. 9,737.

MONTGOMERY v. WHARTON et al.

[Bee, 388;[1] 2 Pet. Adm. 397.]

Admiralty Court, Pennsylvania. 1780.[2]

SHIPPING—VESSEL CHARTERED—RIGHT OF OWNERS TO DISCHARGE MASTER—MASTER'S REMEDY.

1. Owners of a vessel which they have chartered to others, may dismiss the master they have appointed before the completion of the voyage, (although he has signed bills of lading for the cargo, and shipped his mariners,) without the owners shewing sufficient cause for such dismission.

[Cited in Parsons v. Terry, Case No. 10,782; Clayton v. The Eliza B. Emory, 4 Fed. 344.]
[Quoted in Ward v. Ruckman, 36 N. Y. 37.]

2. In cases of real injury the master must apply to the laws of his country for redress.

[Cited in Parsons v. Terry, Case No. 10,782.]
[Quoted in Ward v. Ruckman, 36 N. Y. 37.]

Wharton, and others, owners of the ship General Greene, had chartered her to certain merchants for a particular voyage, and appointed Montgomery master for that voyage. The ship had cleared out at the naval office, and was on the point of sailing, when a sudden frost filled the Delaware with ice, and fixed her in the port of Philadelphia. During the winter some differences arose between the owners and master. The consequence of which was, that the owners, by a letter of dismission, discharged Montgomery from their service, and put another master on board. Whereupon Montgomery libelled against the owners in the admiralty to compel them to fulfil their contract with him. The question was, whether owners could dismiss the master they had appointed before the completion of the voyage, after he had signed bills of lading for the cargo, and shipped his mariners, without the owners shewing sufficient cause for such dismission. And it was contended, that the master, from the time of his appointment, has the sole command of the ship vested in him, and cannot be displaced without committing some offence sufficient to forfeit his rights and justify a dismission. That after signing bills of lading, he becomes answerable to the freighters for the delivery of the cargo, and that the owners cannot by their act exonerate him from this charge, whilst the bills of lading signed with his hand, remain in the possession of the freighters: that the libellant, considering himself as engaged for this voyage, had neglected to seek for any other appointment; and that the owners discharging him at this time, was an injury which the court ought in justice to redress by compelling them to reinstate him in his office.

In behalf of the respondents it was urged, that the owners of a ship have, and ought to have, a right to remove the master at pleasure; because their interests are so deeply concerned in the appointment, that they are answerable not only for his imprudent conduct, but are bound by contracts he may legally make on account of the concern: that if, after their choice of a master, his appointment should be deemed irrevocable for the voyage, unless some gross offence can be proved, the owners will be at the mercy of the master, who, by his weak or wicked conduct, may bring them to ruin. That if when the owners have dismissed the master, the court should undertake to reinstate him, contrary to their judgment and inclination, and so force him upon them, the court and not the owners, ought to be answerable to the freighters for any consequences that may ensue: that neither the charter-party, shipping articles, or bills of lading, prohibit a change of the master, as the contracts made with him are made in his official and not in his personal capacity: that the master is in fact the representative of the owners, and not himself personally bound, neither is he answerable for the conduct of his successor: that in case an action should be brought against him for a breach of contract on the bills of lading, he might plead his dismission by the owners, and it would be good in law: that the subordinate officers are appointed by the master of a ship, and if they should misbehave, or prove insufficient or unsafe, the owners have no remedy but by the removal of the master: that if owners are bound by the appointment of a master to continue him for the voyage, the master ought also to be bound to perform the voyage, even against his interest or inclination; but if, in case of the master's refusal, the owners should libel against him in the admiralty, the court could give no redress, because the court cannot award damages, neither can it compel the master to a specific performance of his contract, from the nature of the service: that the master's appointment is, and ought to be during pleasure only: that the same power which appoints can remove: that if a master suffers injury by an unreasonable dismission, he may have his remedy at common law where ample recompense in damages will be made to him: and finally, that whatever inconveniences may arise to masters being subjected to the caprice of owners of vessels, much greater would arise to the owners, should they be compelled to retain in their service masters once appointed, however contrary to their judgment or interest; and that no instance can be produced of a master being thus forced upon the owners of a ship by any court whatever.

To which, counsel for the libellant replied: That this cause came properly before the court of admiralty: that where a court hath

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

[2] [Affirmed in 1 Dall. (1 U. S.) 49.]

the right to take cognizance of an injury, it follows necessarily that it can give redress: that if the court cannot award damages, it can order a specific performance of the contract: that the court can compel the master to such performance; and if he refuses, can attach his person, and oblige him to give security for the completion of his contract; and, therefore, the jurisdiction is competent: that it would be unjust to send the master to common law for redress, on the owner's breach of contract, as the owners may fail and be unable to pay damages, and therefore the ship ought to be his certain and proper security: that all contracts ought to be sacred and mutual, being founded on reciprocity; and it would be absurd to allege, that the master is bound on his part, and the owners not bound on theirs: that a master engaged for a voyage, is like a servant indented for a certain time; and that the engagement or indenture cannot be dissolved, during the terms, but by mutual consent: that, this vessel was chartered to the freighter, who acquired by the charter-party a temporary property in her, and the owners had nothing to do with her for the time, the ship being under the same circumstances with a house leased for a term: that after the charter-party is signed, and the goods laden on board, the owners cannot discharge the master at their pleasure; as his good character and abilities might have been the inducement which led the freighter to make choice of that ship in preference: and, lastly, that if no instance can be found of a master's being forced upon the owners of a ship, neither can any authority be produced, giving the owners the arbitrary power of dismissing the master at pleasure, and without assigning sufficient cause.

HOPKINSON, J. After having carefully considered the arguments advanced, and the authorities cited in this cause, it appears to me unnecessary to pursue the whole tract of argument that hath been taken on this occasion. The decision of the cause rests solely on the nature of the contract between the owners of a ship and the captain they employ. And the terms or substance of such a contract is, in my opinion this, viz. If the master well and faithfully performs the duties of his station, the owners, on their part, are bound to pay the stipulated wages, and allow him all the customary privileges of his office. But it does not seem to be any part of the contract, that a master once engaged, shall be master for the voyage at all events. This might be extremely injurious to owners, on account of the very extensive powers a master hath over their property. And however hard it may appear that the master should be subject to the caprice of his owners in this respect, he must consider it as one of the unavoidable inconveniences of his occupation, and in cases of real injury apply to the laws of his country for redress. Much greater would the danger be to owners of vessels, and indeed to commerce in general, if the appointment of a master should be irrevocable for the voyage. Whatever good opinion an owner may have of the master, at the time of his appointment, he may find sufficient reason afterwards to change his mind, and yet not be able to produce legal proof of his defection or inability. Fidelity or infidelity before a service performed, is a matter of opinion only, and it would be an unreasonable hardship to compel an owner to continue what was originally a voluntary trust in the hands of a person of whom he may have found subsequent reasons to believe that he may prove either unfaithful or unskilful, although he may not be able to charge him with any positive offence: but I cannot see how this court can interfere to any effect. If the court should decree that the owners shall receive the libellant on board, as master for the voyage contracted for; have not the owners a power to sell their ship, to lay her up, or totally change the voyage, and so evade the decree? Or, if a master should refuse to go the voyage for which he engaged, can this court compel a specific performance of the duties of his office? The remedy in both cases must be in damages for a breach of contract, to which the common law is most competent. Let the bill be dismissed.

The libellant appealed from this judgment, and the cause was again fully argued before the judges of the high court of errors and appeals; but the libel was finally dismissed. [1 Dall. (1 U. S.) 49.]

---

MONTGOMERY & E. R. CO. (OTIS v.). See Case No. 10,612.

MONTGOMERY & E. R. CO. (STRANG v.). See Case No. 13,523.

MONTGOMERY & E. R. CO. (YOUNG v.). See Case No. 18,166.

MONTGOMERY COUNTY (THAYER v.). See Case No. 13,870.